UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| BASSAM A.M.; ZAINAB A.H.; R.A.M.; R.A.M.; M.A.M.; F.A.M.; I.A.M.; R.A.M.; and N.A.M., | Case No. 26-CV-0359 (PJS/DJF) |
| Petitioners, | |
| v. | ORDER |
| PAMELA BONDI, Attorney General; SECRETARY of Homeland Security; TODD M. LYONS, Acting Director of U.S. Immigration and Customs Enforcement; MARCOS CHARLES, Acting Executive Associate Director for Enforcement and Removal Operations; PETER BERG, Field Office Director for Enforcement and Removal Operations; U.S. DEPARTMENT OF HOMELAND SECURITY; and U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, | |
| Respondents. | |

Nicholas Ratkowski, RATKOWSKI LAW PLLC, for petitioners.

Liles H. Repp, UNITED STATES ATTORNEY'S OFFICE, for respondents.

This matter is before the Court on petitioners' petition for a writ of habeas corpus. Petitioners Bassam A.M., Zainab A.H., and their seven children are citizens of Syria who were lawfully admitted to the United States as refugees on March 14, 2024.[1]

---

[1]Pursuant to this District's policy in immigration cases, the Court identifies the
(continued...)

V. Pet. ¶¶ 1, 3.  On June 27, 2025, each petitioner filed an application to adjust status to that of lawful permanent resident ("LPR").[2]  *Id.* ¶ 5.  Despite the fact that petitioners have filed their LPR applications and complied with all biometrics requirements, petitioners have yet to be scheduled for interviews.  *Id.* ¶ 8.

On January 9, 2026, the Department of Homeland Security launched "Operation PARRIS" to target what the Department characterized as "fraudulent refugee applications in Minnesota."  *Id.* ¶ 78.  Since then, Immigration and Customs Enforcement ("ICE") agents have been detaining lawfully admitted refugees, claiming that they are subject to detention under 8 U.S.C. § 1159(a)(1).  *Id.* ¶¶ 10, 82.

On January 10, 11, and 12, 2026, ICE agents attempted to arrest petitioners at their home.  *Id.* ¶ 6.  The agents did not have valid arrest or search warrants.  *Id.*

## I.  JURISDICTION

Respondents move to dismiss the petition for lack of jurisdiction, arguing that, first, petitioners are not "in custody" as required to obtain habeas relief, and second, that petitioners' claims are not ripe.  The Court considers each argument in turn.

---

[1](...continued)
adult petitioners only by first name and last initials and the minor petitioners only by initials.

[2]For a detailed description of the exhaustive multi-agency screening procedures that individuals must undergo to be admitted as refugees, *see U.H.A. v. Bondi*, No. 26-CV-0417 (JRT/DLM), 2026 WL 222226, at *4–5 (D. Minn. Jan. 28, 2026).

*A. Custody*

Under 28 U.S.C. § 2241(c)(3), a court may grant a writ of habeas corpus to a "prisoner . . . in custody in violation of the Constitution or laws or treaties of the United States." The in-custody requirement is jurisdictional. *See Carey v. Minnesota*, 767 F.2d 440, 441 (8th Cir. 1985) (per curiam). "Custody is tested at the time of filing the petition." *Weaver v. Pung*, 925 F.2d 1097, 1099 (8th Cir. 1991).

In the habeas context, "custody" means more than physical detention. *See Jones v. Cunningham*, 371 U.S. 236, 239–40 (1963). It also includes state-imposed "conditions [that] significantly confine and restrain [the petitioner's] freedom" and that are "not shared by the public generally." *Id.* at 240, 243. So, for example, parole, release on one's own recognizance, and supervised release may constitute "custody" for purposes of habeas jurisdiction. *Id.* at 242–43 (parole); *Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist.*, 411 U.S. 345, 351–53 (1973) (release on recognizance); *Masten v. United States*, 752 F.3d 1142, 1146 n.2 (8th Cir. 2014) (supervised release).

Here, petitioners contend that they are in "constructive custody" because they are effectively confined to their home in an effort to avoid arrest and because respondents have asserted authority to detain them under § 1159(a)(1). Under that provision, refugees who have not acquired LPR status after one year in the United States must "return or be returned to the custody of the Department of Homeland

Security for inspection and examination for admission to the United States as an immigrant in accordance with the provisions of sections 1225, 1229a, and 1231 of this title." Because this provision "return[s]" refugees in petitioners' position to DHS custody, petitioners argue, they are in constructive custody.

Whether petitioners are "in custody" for purposes of habeas jurisdiction is a difficult question. As respondents argue, this case is distinguishable from *Jones* and similar cases because the restrictions in those cases were legal restrictions imposed by the government. By contrast, petitioners here are not legally required to stay at home—indeed, respondents would be happy if petitioners would *leave* their home—but petitioners are (understandably) staying at home to avoid detention.[3] Notwithstanding that distinction, however, the Court nevertheless believes that under the unique circumstances of this case, petitioners meet the "in custody" requirement.

*First*, courts have long held that, at least in certain circumstances, a habeas petitioner may challenge a future term of imprisonment. *See, e.g., Peyton v. Rowe*, 391 U.S. 54, 67 (1968) (holding that a prisoner may challenge a consecutive sentence that he has not yet begun to serve); *Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 487–89 (1973) (permitting a prisoner serving time in Alabama to file a habeas petition in Kentucky with respect to a pending Kentucky indictment).

---

[3]The Court notes that petitioners are not accused of any illegal activity and cannot be considered fugitives, as respondents know where they are.

Admittedly, in *Peyton*, *Braden*, and similar cases involving challenges to future custody, the petitioners were generally serving (concededly valid) sentences at the time they filed their petitions. Although at first blush this might seem to be an irrelevant coincidence, the Supreme Court has attached jurisdictional significance to this fact, noting in *Braden* that the Kentucky detainer meant that the current Alabama custodian was acting as an agent for Kentucky. *Braden*, 410 U.S. at 498–99. *Braden* expressly reserved the question of whether the lack of a detainer would have changed the outcome. *Id.* at 489 n.4.

Following *Braden*, some courts have found that a detainer is not necessary. *See Frazier v. Wilkinson*, 842 F.2d 42, 45 (2d Cir. 1988) (holding that petitioner was "in custody" despite the lack of a detainer because "it is clear that New York intends to require the petitioner to serve the Queens County sentence upon his release from federal custody"). And there are a handful of unusual cases—including one in the Eighth Circuit—in which a petitioner who was not detained was nevertheless permitted to challenge future custody. *See Williams v. Rogers*, 449 F.2d 513, 519 (8th Cir. 1971) (holding that an Air Force sergeant was "in custody" as a result of the military's attempt to reassign him to the Phillippines, where he would be confined for trial); *Ex parte Fabiani*, 105 F. Supp. 139, 148 (E.D. Pa. 1952) (holding that a draftee was "presently in constructive custody of the Government by reason of the United States Attorney's

-5-

direction to him to return to the United States by February 15 or be indicted"; cited in *Jones*, 371 U.S. at 240 & n.11, as an example of the historical understanding of the scope of habeas); *cf. Blanco v. Florida*, 817 F. App'x 794, 796 (11th Cir. 2020) (concluding that a petitioner was not "in custody" because he offered no evidence that he was threatened with imprisonment if he failed to pay his debt).  At any rate, even if these cases are outliers, it is clear that the fact that petitioners are not currently in the custody that they seek to challenge is not, in and of itself, fatal to their claims.  *See González-Fuentes v. Molina*, 607 F.3d 864, 874 n.8 (1st Cir. 2010) ("We recognize that a future restraint on liberty may provide a basis for habeas jurisdiction if it is imminent and inevitable.").

*Second*, even if petitioners must be under some current government-imposed constraint in order to challenge their future detention (as *Braden* might suggest), the Court finds that petitioners are under such a constraint.  As petitioners note, because they have not yet adjusted status, they are to "return or be returned to the custody of the Department of Homeland Security" under § 1159(a)(1).  In respondents' view, reiterated in countless filings in this District, petitioners are therefore subject to *mandatory* detention under either § 1159(a)(1) itself or under § 1159(a)(1) in combination with 8 U.S.C. § 1225(b)(2).  *See, e.g., Ali H. v. Bondi*, No. 26-CV-0767 (PJS/DLM), ECF No. 5 at 2 (D. Minn. Jan. 31, 2026); *Amin A. v. Trump*, No. 26-CV-0251 (PJS/ECW), ECF No. 5 at 2–5 (D. Minn. Jan. 15, 2026).

In other words, as respondents would have it, (1) petitioners are *at this moment* legally required to "return or be returned to the custody of the Department of Homeland Security" and (2) the Department of Homeland Security is *at this moment* legally required to detain petitioners. The only way that petitioners can avoid mandatory detention is to adjust their status. But unlike a person on supervised release who must comply with certain conditions on pain of possible re-imprisonment—a person who *is* generally deemed to be in custody for habeas purposes, *see Hensley*, 411 U.S. at 351–52—here, petitioners *cannot* readjust their status and thus avoid detention. Only the government can adjust petitioners' status, and thus the government itself is preventing petitioners from escaping mandatory detention.

The Court therefore holds that, under the unusual circumstances of this case, petitioners satisfy the "in custody" requirement. This finding will not, as respondents claim, "dramatically enlarge the scope of [the] writ to encompass any person who chooses to constrain their own movement for fear of potential arrest in future." ECF No. 5 at 2. The Court does not rely on the fact that petitioners are remaining in their home to avoid detention. To the contrary, the Court fully agrees that a suspect who, for example, confines himself to a hotel or a friend's house to avoid arrest is not "in custody" for purposes of habeas. Rather, the Court finds that petitioners are in custody because, according to the government, they are legally obligated to return to the

custody of the Department of Homeland Security, the Department is legally required to detain them, and petitioners' only escape hatch is completely in control of the government itself.  In the Court's view, this unusual situation fits comfortably within the meaning of "custody" as it has been defined for purposes of habeas review.

### B.  Ripeness

Respondents next contend that this case is not ripe.  "Ripeness is demonstrated by a showing that a live controversy exists such that the plaintiffs will sustain immediate injury from the operation of the challenged provisions, and that the injury would be redressed by the relief requested."  *Emps. Ass'n, Inc. v. United Steelworkers of Am.*, 32 F.3d 1297, 1299 (8th Cir. 1994).  "This means that a plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement."  *S.D. Mining Ass'n, Inc. v. Lawrence Cnty.*, 155 F.3d 1005, 1008 (8th Cir. 1998) (cleaned up).

There is no doubt that petitioners meet this standard.  Respondents take the position that petitioners are *currently* subject to mandatory detention and, in the week leading up to the filing of the habeas petition, ICE agents came to petitioners' door three times in an attempt to arrest and detain them.  V. Pet. ¶ 6.  Respondents nevertheless contend that this case is not ripe because, at some point in the future, respondents may have a *different* basis on which to detain petitioners.  But whether such a basis might

arise in the future is irrelevant.  Respondents contend that they are currently required to detain petitioners, and ICE agents have repeatedly tried to take petitioners into custody.  No further factual development is needed.  *See Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 608 (8th Cir. 2022) ("A case that would not benefit from further factual development and poses a purely legal question not contingent on future possibilities is fit for judicial decision." (cleaned up)).

Relatedly, respondents suggest that "[w]holly enjoining application of 8 U.S.C. § 1159(a)(1) with respect to Petitioners may well conflict with 8 U.S.C. § 1252(g)," which deprives courts of jurisdiction over actions and decisions by the Attorney General "to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  ECF No. 5 at 5.  This is a red herring.  Petitioners do not seek an order preventing respondents from detaining them at any time for any reason.  Further, the Court can craft relief that leaves in place respondents' ability to commence proceedings against petitioners should any basis for such proceedings arise.

## II.  MERITS

Having resolved the jurisdictional issues, the Court turns to the merits.  Again, respondents take the position that petitioners are subject to mandatory detention under § 1159(a)(1) because they have been in the United States for more than one year and have not yet acquired LPR status.  Under ICE policy, however, refugees' "[f]ailure . . . to

apply for adjustment of status under [§ 1159] is not a sufficient ground to place them in removal proceedings, and therefore not a proper basis for detaining them." See U.S. Immigr. & Customs Enf't, Policy Mem., *Detention of Refugees Admitted Under INA § 207 Who Have Failed to Adjust to Lawful Permanent Resident Status*, PM-11039.1, at 2 (May 10, 2010) ("ICE Policy").

Under the so-called *Accardi* doctrine, "the judiciary may in certain contexts review an agency's compliance with its own regulations when the regulations impose binding norms on the agency." *Ngure v. Ashcroft*, 367 F.3d 975, 982 (8th Cir. 2004); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954) (requiring administrative agencies to act consistently with internal policy).

> "As a general rule, an agency pronouncement is transformed into a binding norm if so intended by the agency[,] and agency intent, in turn, is ascertained by an examination of the statement's language, the context, and any available extrinsic evidence." *Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987) (internal quotations and citations omitted). We consider the "language and context" of agency regulations to determine whether they were "intended to bind" the agency's discretion. *South Dakota v. Ubbelohde*, 330 F.3d 1014, 1028 (8th Cir. 2003). The Supreme Court has conducted judicial review, for example, where agency rules were "intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion," *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538–39, 90 S. Ct. 1288, 25 L. Ed. 2d 547 (1970) (citing *Vitarelli*, 359 U.S. 535, 79 S. Ct. 968, 3 L. Ed. 2d 1012), or where a rule required the agency to exercise independent discretion, but it failed to do so. *United States ex rel. Accardi*

> *v. Shaughnessy*, 347 U.S. 260, 268, 74 S. Ct. 499, 98 L. Ed. 681
> (1954). On the other hand, where a procedural rule is
> designed primarily to benefit the agency in carrying out its
> functions, judicial review may be circumscribed. *Am. Farm
> Lines*, 397 U.S. at 539, 90 S. Ct. 1288.

*Ngure*, 367 F.3d at 982–83; *see also United States v. Lee*, 274 F.3d 485, 492 (8th Cir. 2001) ("the *Accardi* doctrine bars administrative agencies from taking action inconsistent with their internal regulations when it would affect individual rights" (citation and quotation marks omitted)).

Applying these considerations, the Court readily concludes that the ICE Policy is enforceable under the *Accardi* doctrine, and respondents do not argue otherwise. The Policy is stated in direct terms and is clearly intended to protect individual rights. It is also a sensible interpretation of § 1159(a)(1); as Judge Tunheim recently observed:

> Because § 1159(a) makes refugees ineligible for adjustment
> until one year after entry, Defendants' interpretation would
> subject **every** refugee to detention, **unless** USCIS conducted
> the inspection and examination precisely at the one-year
> mark. That outcome is nonsensical and would cause many
> unadjusted refugees to celebrate their one-year anniversary
> in this country in a jail cell.

*U.H.A. v. Bondi*, No. 26-417 (JRT/DLM), 2026 WL 222226, at *8 (D. Minn. Jan. 28, 2026).

Under the Policy, respondents have no basis to arrest or detain petitioners, who are all lawfully admitted refugees with pending applications for adjustment of status and no criminal history. *Cf.* ICE Policy at 2 (indicating that an unadjusted refugee may

-11-

be arrested "upon reasonable belief of removability").  The Court will therefore grant the petition and enjoin respondents from arresting or detaining petitioners on the basis that they have not yet adjusted status.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Petitioners' petition for a writ of habeas corpus [ECF No. 1] is GRANTED IN PART.

2. The Court DECLARES that petitioners may not be arrested or detained solely on the basis that they have not yet adjusted status to that of lawful permanent resident.

3. Respondents, and all of respondents' officers, agents, servants, employees, attorneys, and any other persons in active concert or participation with them, are ENJOINED from arresting, detaining, or attempting to arrest or detain any of the petitioners in this action solely on the basis that they, or any one of them, have not yet adjusted status to that of lawful permanent resident.

4. The remainder of petitioners' petition is DENIED WITHOUT PREJUDICE.

5. The text of this order, with petitioners' full names and Alien Registration Numbers, is reproduced in an attached Appendix, which is filed under seal.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: March 9, 2026                    /s/ Patrick J. Schiltz
                                        Patrick J. Schiltz, Chief Judge
                                        United States District Court